IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRUCE ERIC HALL, AIS # 120305, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:14cv196-WHA |
| | ) | [WO] |
| PHYLLIS BILLUPS, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### Introduction

In this 42 U.S.C. § 1983 action, plaintiff Bruce Eric Hall ("Hall"), a state inmate, alleges that defendant Phyllis Billups physically assaulted him when he was incarcerated at Draper Correctional Facility, in Elmore, Alabama.[1]  Hall names as defendants Warden Phyllis Billups, Steward Susan Kennedy, Captain John Crow, Correctional Officers Simmons and Kelly, and Warden Louis Boyd.  He seeks damages against each defendant. (Doc. # 1, Compl. at 4)  According to Hall, defendant Billups used excessive force against him when she slapped him three times in the face and choked him.  (*Id*. at 3).  He also alleges defendant Kelly held his arm while defendant Simmons and Crow did not intervene. (*Id*.).  Hall further contends that defendant Kennedy instigated the assault by making a false accusation against him.  Finally, Hall alleges that Warden Boyd denied him due process during the disciplinary hearing that resulted from this incident.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the court set this matter for an evidentiary hearing because the court concluded that there were genuine disputes of fact about the plaintiff's claim of excessive force, and none of the parties requested a jury trial.  *See* Doc.

---

[1] Hall is currently incarcerated at Elmore County Correctional Facility.

# 46.  The court held an evidentiary hearing on February 23, 2017.  For the reasons which follow, the court concludes that judgment should be entered in favor of the defendants and against the plaintiff, and this case should be dismissed with prejudice.

## FACTS

After consideration of the evidence presented at the hearing[2], the court makes the following findings of fact.  On December 18, 2012, plaintiff Hall was working as a baker in the kitchen at Draper Correctional Facility.  Steward  Kennedy was responsible for overseeing the kitchen.  As the baker, Hall used left over dough and hot dogs to make pigs in a blanket after the general population had eaten lunch.[3]  As the pigs in a blanket were coming out of the oven, Warden Billups and Captain Crow[4] were coming down the hall towards the kitchen. When Billups and Crow entered the kitchen, Kennedy was throwing the pigs in a blanket in the trash.  When asked why she was throwing food away, Kennedy replied that Hall had made the pigs in a blanket without her permission.

Hall took offense to Kennedy's characterization of what happened and began yelling that Kennedy was lying.  Billups instructed Hall to be quiet but he continued to yell. Billups then directed Hall to leave the kitchen area and wait in the dining area.  Once in the dining area, Hall continued to yell that Kennedy was lying and Billups continued to order

---

[2] Given the contradictory nature of the testimony and evidence presented at the evidentiary hearing, it is necessary for the court to make findings of fact.  In making its credibility determination, the court recognizes that it is improper to determine credibility based on the "status" of a witness.  *United States v. Ramirez-Chilel,* 289 F.3d 744, 749 (11th Cir. 2002).  Thus, Hall's status as a convicted felon is not determinative.  Rather, the court must weigh the testimony of the witnesses in light of all the facts, taking into account their interests, the consistencies or inconsistencies in their testimonies, and their demeanors on the stand.  *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999).

[3] There is some dispute as to whether Kennedy gave permission to make the pigs in a blanket or whether Hall decided on the culinary delight himself. The court need not resolve this discrepancy because whether Kennedy was lying is immaterial to the resolution of this matter. It is undisputed that Hall made the pigs in a blanket and that Kennedy was throwing them away when Billups entered the kitchen.

[4] At the time of the incident, Crow was a captain. He has since been promoted to Warden.

2

Hall to be quiet.

The evidence was clearly established that Hall was upset with Kennedy and angry. He forcefully asserted that she was lying. Hall admitted that he disobeyed Billups' order to be quiet, and he continued to yell. Billups testified that she felt threatened by Hall because he was upset and moving quickly towards her. Although Hall contends that Billups struck him three times, the court finds by a preponderance of the evidence that Billups struck Hall once on the side of his neck because Hall was advancing towards her quickly. This finding is bolstered by the testimony of inmate Joseph Bozeman who testified that he heard what sounded like one slap, and the testimony of Crow and Billups who both testified that Billups only struck Hall one time.[5] The court further finds that there is no credible evidence before it that officer Kelly was holding Hall's arm when Billups struck him.

After Billups struck Hall, Officer Surles handcuffed and escorted Hall to the health care unit where a body chart was completed. (Def's Ex. 3). The body chart indicates that Hall's face was "slightly red" but noted no other injury. (*Id*.)

Hall was subsequently issued a disciplinary for failing to obey a direct order. Hall admitted during the disciplinary proceeding that he did not obey Billups' order to stop talking. The hearing officer also accepted Hall's testimony that he was guilty, and found Hall guilty of failing to obey a direct order. His punishment consisted of loss of canteen, telephone and visiting privileges for 45 days. (*See* Doc. # 20, Ex. 6 at 3-4).

## DISCUSSION

### A. Absolute Immunity

With respect to any claims Hall lodges against the defendants in their official

---

[5] Billups testified that she administered a "branchial stun" but described the action as a backhanded strike to the left side of Hall's neck.

capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.  Claims of Excessive Force

The use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the inmate does not suffer serious injury. *Hudson v. McMillian*, 503 U.S. 1 (1992). The standard for evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and contains both a subjective and objective component. *Hudson*, 503 U.S. at 6-7, 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). Regarding the objective component, Hall must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* (internal

quotations omitted).  Factors to consider in making this determination include "the extent of injury suffered," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (citation omitted); *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986) (listing factors); *Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).  "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced *such wantonness* with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  *Whitley,* 475 U.S. at 321 (emphasis added).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10.  Rather, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* (quotation marks omitted).  Thus, "an injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than de minimus injury." *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006).  This is the objective prong of the Eighth Amendment test.

> The "core judicial inquiry," . . . was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)

In short, to establish a claim for excessive force, a plaintiff must show that (1) the defendants acted with a malicious and sadistic purpose to inflict harm and (2) that more than a *de minimis* injury resulted.  *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir.

2002).  With these principles in mind, the court now turns to the facts of this case.

It is undisputed that Billups administered a branchial stun slap to the left side of Hall's neck.  Hall admits that he was upset, angry and did not obey Billups' instructions to be quiet.  The court finds that Hall was moving towards Billups when she administered the slap.  There is no credible evidence before the court that the force she administered was malicious or sadistic for the very purpose of causing Hall harm.  Instead, the force was administered to stop Hall both from advancing and from yelling.  The court further finds that Billups struck Hall only once and Hall suffered no injury as a result of the force.  At best, Billups' action constituted a "*de minimis* use[] of physical force" which is excluded from "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments" as such contact "is not of a sort 'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 9-10; *Hall v. Santa Rosa Corr. Inst.*, 403 F. App'x 479, 482 (11th Cir. 2010) (officers who forced inmate's hands behind his back to apply handcuffs after inmate refused orders and became combative "did not use unconstitutional excessive force [and] no constitutional violation occurred."); *McCall v. Crosthwait*, 336 F. App'x 871, 872 (11th Cir. 2009) (no constitutional violation occurred where officer pushed detainee out of jail's elevator causing inmate to hit partially open steel door and fall against plexiglass window thereby suffering bruised shoulder and elbow); *Johnson v. Moody*, 206 F. App'x 880, 885 (11th Cir. 2006) (minor nature of injury suggested that officer's shutting of metal tray door on inmate's hand was *de minimis* use of force which did not constitute Eighth Amendment violation).  There is no evidence that Hall suffered any injury as a result of the force.  The "absence of serious injury" provides some indication of the level of force used.  With respect to the other *Hudson* and *Whitley* factors which the court should consider, Hall failed to present any evidence which shows that any of those factors should weigh in his favor.  The

evidence is simply insufficient to support a finding that Billups used force that was "repugnant to the conscience of mankind" or used force to "maliciously and sadistically to cause harm" to Hall. *See Hudson*, 503 U.S. at 7, 9-10. Furthermore, the evidence does not support a reliable inference of wantonness in the infliction of pain to rise to the level of a constitutional violation under the cruel and unusual punishment provisions of the Eighth and Fourteenth Amendments. *Whitley,* 475 U.S. at 321.

Hall also contends that Captain Crow and officers Simmons and Kelly failed to intervene and prevent Billups from slapping him.[6] A prison official may be held liable under the eighth amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). "When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however. *Davidson v. Cannon*, 474 U.S. 344 (1986). Prison officials must have been deliberately indifferent to a known danger before their failure to intervene offends "evolving standards of decency," thereby rising to the level of a constitutional tort. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). The known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a guard's failure to act can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989). There is simply no credible evidence before the court that Captain Crow, Officer Simmons or

---

[6] As previously noted, the court finds that Kelly was not holding Hall's arm when Billups struck him.

Officer Kelly had any inkling that Billups was going to administer force to calm Hall down and thus, there is no evidence that these officers were aware of and disregarded a threat to Hall's safety. Thus, the court concludes that Hall has failed to establish a violation of his Eighth Amendment rights.

### C.  Due Process during Disciplinary Proceeding

Finally, Hall contends that his right to due process was violated by Warden Boyd because he was not permitted to call witnesses, was denied a polygraph test, and Captain Crow was permitted to participate in the disciplinary proceeding. The punishments imposed upon Hall for the challenged disciplinary infraction of failing to obey a direct order were forty-five (45) days loss of canteen, telephone and visitation privileges. (Doc. # 20, Ex. F at 4). Under the circumstances of this case, Hall's due process claim entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484 (1995). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Id.*; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process).

Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him because the resulting restraints are not so

severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the deprivations imposed upon Hall based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*.

The court must therefore determine whether the actions about which Hall complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*. Applying the *Sandin* inquiry, the court concludes that the temporary loss of canteen, telephone and visitation privileges "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Moreover, Hall was given notice, an opportunity to testify, have witnesses present, and was given a written explanation of the ruling at the disciplinary hearing.[7] Consequently,

---

[7] Even assuming a right to due process in the challenged disciplinary proceeding, the failure to provide a polygraph test did not violate this right. It is undisputed that the hearing officer allowed testimony from two inmates identified as witnesses. Hall was also permitted to testify. While it is true that *Wolff* recognized an inmate's right to call witnesses and submit documentary evidence, that decision does not afford prisoners unlimited rights to call witnesses or submit evidence in disciplinary hearings. The Court in *Wolff* acknowledged that prison officials have the "extraordinarily difficult" task of operating correctional institutions, which necessarily entails the responsibility for the safety of staff and inmates and was reluctant to extend to prisoners the "unqualified right to call witnesses" in prison disciplinary proceedings. Instead, the Court extended to prison officials the "necessary discretion" to place limits on an inmate's right to call witnesses or present documents and made it clear that prison authorities must be allowed flexibility in the way they conduct disciplinary hearings. *Wolff*, 418 U.S. at 566-567. Hall does not identify any witnesses he was prevented from calling to testify. In light of the foregoing, it is apparent that the plaintiff's allegation does not indicate that he

the plaintiff's due process claim fails under the law as established in *Sandin*, and he has not established that his disciplinary hearing violated due process.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge judgment be entered in favor of the defendants and against the plaintiff, and that this case be DISMISSED with prejudice.  It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **March 14, 2017**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 28th day of February, 2017.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

was deprived the minimum due process required by *Wolff* and therefore does not state a due process claim.